[Cite as *State v. Sibley*, 2017-Ohio-7015.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| STATE OF OHIO | | C.A. No. 16CA010908 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| KASHAUN SIBLEY | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 15CR091955 |

DECISION AND JOURNAL ENTRY

Dated: July 31, 2017

SCHAFER, Judge.

**{¶1}** Defendant-Appellant, Kashaun Sibley, appeals from his convictions in the Lorain County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

**{¶2}** The Lorain County Grand Jury indicted Sibley on the following six counts: (I) attempted murder in violation of R.C. 2923.02(A), R.C. 2903.02(A), a first-degree felony; (II) aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony; (III) aggravated robbery in violation of R.C. 2911.01(A)(3); (IV) felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony; (V) felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony; and (VI) tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony. Each count of the indictment also carried an attendant firearm specification in violation of R.C. 2941.145. The indictment arose from an incident on December 23, 2014, where Sibley, Nicholas Potts, and Potts' brother, Jerome Tolliver, lured Marcus Delaney to an

abandoned residence on Gary Avenue where he was robbed and shot twice. Sibley pleaded not guilty to all of the counts contained within the indictment. The Grand Jury also indicted Potts in this matter and he pleaded not guilty to those charges. Tolliver pleaded guilty to the lesser offense of complicity to felonious assault in exchange for his cooperation with the State.

{¶3} Prior to trial, Sibley retained the same attorney as Potts. In so doing, Sibley signed a potential conflicts waiver. The State subsequently made a motion to prohibit defense counsel from representing both Potts and Sibley due to the potential conflict of interest. The trial court held a hearing on the State's motion, at which time it inquired about any potential conflicts of interest that may arise from trial counsel's dual representation. Trial counsel, Potts, and Sibley each informed the trial court that they were aware of the risks involved with the dual representation and further asserted that no conflict of interest existed in this case. Sibley and Potts both informed the trial court that they wished to be represented by the same attorney. The trial court ultimately permitted trial counsel to represent both defendants, over the State's objection. Potts' and Sibley's trials were subsequently consolidated and tried together to a jury.

{¶4} At trial, 13 witnesses testified on the State's behalf. At the close of the State's case-in-chief, the defense made a Crim.R. 29 motion for judgment of acquittal, which the trial court denied. Sibley and Potts subsequently testified before the defense rested its case. At the close of all evidence, the defense renewed its Crim.R. 29 motion, which the trial court again denied. The jury deliberated and ultimately found Sibley guilty on all counts contained within the indictment, including all firearm specifications. Sibley thereafter filed a Crim.R. 33 motion for a new trial, which the trial court denied. At Sibley's sentencing hearing, the trial court merged the aggravated robbery and felonious assaults counts with the attempted murder count and sentenced Sibley according to law.

{¶5} Sibley filed this timely appeal and presents four assignments of error for our review. As Sibley's first and second assignments of error implicate similar issues, we elect to address them together.

II.

### Assignment of Error I

**The dual representation of Sibley and Potts was a conflict of interest and constituted ineffective assistance of counsel, depriving Sibley to a fair trial. [sic.]**

### Assignment of Error II

**The consolidation of Sibley's trial with Potts, without inquiry by the court as to the risk that would be undertaken by Sibley, amounted to plain error.**

{¶6} In his first assignment of error, Sibley argues that his trial counsel's dual representation of him and Potts constituted ineffective assistance of counsel. In his second assignment of error, Sibley contends that the trial court's failure to inquire into the potential conflict of interest posed by the consolidation of his and Potts' trials amounted to plain error. We disagree with both arguments.

{¶7} The Sixth Amendment right to the effective assistance of counsel secures to a criminal defendant both the right to competent representation and the right to representation that is free from conflicts of interest. *Wood v. Georgia,* 450 U.S. 261, 271 (1981). "[T]he United States Constitution is violated by an actual conflict of interest, not a possible one." *State v. Gillard*, 78 Ohio St.3d 548, 552 (1997). As a result, "[w]hen a possible conflict of interest exists, a defendant is entitled only to an inquiry by the trial court." *Id*.

{¶8} A possibility of a conflict exists if the "'interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties.'" *State v. Dillon,* 74 Ohio St.3d 166, 168 (1995), quoting *Cuyler v. Sullivan*, 446 U.S. 335, 356, fn. 3 (1980) (Marshal, J.,

concurring in part and dissenting in part). An actual conflict of interest "exists if, 'during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue.'" *Id.* at 169, quoting *Cuyler* at 356*; accord Gillard* at 552. The Supreme Court of Ohio has held that "a lawyer represents conflicting interests 'when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.'" *Gillard* at 553, quoting *State v. Manross*, 40 Ohio St.3d 180, 182 (1988)*.*

{¶9} An "actual conflict of interest," for purposes of the Sixth Amendment, is "a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172, fn. 5 (2002); *see also Gillard* at 552. Thus, to prove an "actual conflict of interest," the defendant must show that his counsel "actively represented conflicting interests," and that the conflict "actually affected the adequacy of his representation." *Id.* at 166, 171, quoting *Cuyler* at 349–350. In order to show such a conflict, a defendant must "point to 'specific instances in the record to suggest an actual conflict or impairment of [his] interests.'" *United States v. Hall,* 200 F.3d 962, 965–66 (6th Cir.2000), quoting *Thomas v. Foltz,* 818 F.2d 476, 481 (6th Cir.1987) (internal quotation omitted). An "adverse effect" is established where the defendant points to "some plausible alternative defense strategy or tactic [that] could have been pursued, but was not because of the actual conflict impairing counsel's performance." *Perillo v. Johnson,* 205 F.3d 775, 781 (5th Cir.2000) (internal quotation omitted); *see also Gillard* at 553. While it is not necessary to prove that the defense theory would have been successful, it is necessary to show that the alternative theory was viable. *Gillard* at 553. Additionally, an appellant "'must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *Id.*, quoting *United States v. Fahey*, 769 F.2d 829, 836 (1st Cir.1985).

{¶10} In the present case, Sibley signed a written potential conflict of interest waiver upon retaining the services of his trial counsel, who at that point was already representing Potts in this matter. The State subsequently made a motion to prohibit defense counsel from representing both Potts and Sibley due to a potential conflict of interest stemming from the dual representation. The trial court held a hearing on the State's motion, at which time the trial court conducted an extensive inquiry concerning the potential conflict of interest. During this inquiry, trial counsel assured the trial court that he had spoken with Potts and Sibley about a potential conflict of interest arising from his dual representation, but stated there "did not appear to be any potential conflict" at that time. The trial court subsequently engaged in a colloquy with Sibley on the record where Sibley stated that he had spoken with his attorney and was aware of the risks associated with having the same attorney as his co-defendant. Sibley insisted that a conflict of interest "wouldn't happen" in this case because neither he nor Potts committed the alleged offenses. Sibley then stated that he wished to keep his attorney. The trial court then engaged in a similar colloquy with Potts on the record. The trial court allowed Potts and Sibley "to think about [the dual representation] over the weekend." When neither defendant indicated the following week that they wished to reconsider the dual representation, the trial court ruled, over the State's objection, that Potts and Sibley could be represented by the same attorney.

{¶11} However, the record indicates that Sibley did not object to the dual representation at trial. Because Sibley did not object to his attorney also representing Potts, Sibley bears the burden of demonstrating that an actual conflict of interest adversely affected his trial counsel's performance. *Cuyler* at 348. On appeal, Sibley argues that an actual conflict of interest arose once the State's witnesses, namely Tolliver, Corinna Magrum, and Marcus Delaney, provided testimony implicating him in the crimes. Sibley contends that a plausible alternative theory

would have been to implicate Potts and Tolliver in the crimes, which trial counsel was unable to do due to his dual representation.

{¶12}  After a careful examination of the record, we determine that Sibley's alternative defense strategy or tactic of blaming Potts and Tolliver for the crimes is not a viable one since it is belied by other evidence implicating him in the shooting of Mr. Delaney.  The evidence presented at trial, which is more fully detailed in Sibley's third assignment of error, reveals that Sibley, Potts, and Tolliver drove together to Gary Avenue with the intent to rob Mr. Delaney. Tolliver testified that he saw Potts and Sibley both carrying firearms.  A forensics laboratory employee with the Ohio Bureau of Criminal Investigation, testified that his examination of five cartridge cases found at the scene of the crime led him to conclude that at least two different firearms were used on the day in question.  A resident of Gary Avenue testified that he saw three men sitting on the back porch of the abandoned house moments before Mr. Delaney was shot. Indeed, Mr. Delaney identified Sibley in court as the man who shot him on the day in question. Another resident of Gary Avenue testified that he saw at least three men fleeing from the scene immediately following the shooting.  This neighbor also testified that while the three men were fleeing, one of the men "turned off" while the other two men continued running together.  This neighbor's testimony supports Corinna Magrum and Mario Escobar's respective testimony, which was that Potts and Tolliver ran to their house after the shooting, with Sibley eventually arriving a bit later.  Because Sibley's alternative theory is not viable, we conclude that trial counsel's purported conflict of interest did not adversely affect his performance at trial. Accordingly, we determine that Sibley was not deprived of his Sixth Amendment right to effective counsel.

**{¶13}** Turning to his second assignment of error, Sibley contends that the trial court committed plain error by failing to inquire about the potential risks that may arise in the consolidation of his and his co-defendant's trials. However, the body of Sibley's second assignment of error fails to provide the plain error standard of review, let alone any analysis as to how he has satisfied that standard. *See* App.R. 16(A)(7); *see also* Loc.R. 7(B)(7) ("Each assignment of error shall be separately discussed and shall include the standard of standards of review applicable to that assignment of error * * *."). This Court has consistently stated that "[i]f an argument exists that can support [an] assignment of error, it is not this Court's duty to root it out." *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998), citing App.R. 12(A)(2) and App.R. 16(A)(7). Accordingly, we decline to fashion a plain error argument on Sibley's behalf and then address it sua sponte.

**{¶14}** Sibley's first and second assignments of error are overruled.

### Assignment of Error III

**The verdicts for Aggravated Robbery and Tampering with Evidence, as defined by the court, in counts two, three, and six were not supported by sufficient evidence.**

**{¶15}** In his third assignment of error, Sibley argues that his convictions for aggravated robbery and tampering with evidence[1] are unsupported by sufficient evidence. We disagree.

**{¶16}** "'We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Smith*, 9th Dist. Summit No. 27389, 2015-Ohio-2842, ¶ 17, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review,

---

[1] Sibley does not challenge his convictions for attempted murder, felonious assault, or any of the firearm specifications within his third assignment of error.

our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "Circumstantial and direct evidence inherently possess the same probative value." *Id.* at paragraph one of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus. Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775, ¶ 33.

{¶17} This matter implicates Sibley's convictions for aggravated robbery in violation of R.C. 2911.01(A)(1) and R.C. 2911.01(A)(3), which state:

(A) No person, in attempting or committing a theft offense * * *, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

* * *

(3) Inflict, or attempt to inflict, serious physical harm on another.

R.C. 2911.01(A)(1) imposes strict liability as to the elements of displaying, brandishing, or waving a deadly weapon. *State v. Lester*, 123 Ohio St.3d 396, 2009–Ohio–4225, ¶ 32. Otherwise, the mental element is the same as theft under R.C. 2913.02, which is "knowingly." *State v. Wright*, 9th Dist. Summit No. 27434, 2015-Ohio-2381, ¶ 14, citing *State v. Horner*, 126 Ohio St.3d 466, 2010–Ohio–3830, ¶ 53. A person acts "knowingly" when that person,

regardless of purpose, is aware that his or her conduct "will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). Here, Sibley argues that the State presented no evidence demonstrating that he committed or attempted to commit a theft offense, since nothing was taken from Mr. Delaney. As this is the only element of the aggravated robbery statute that Sibley contests on appeal, we will confine our analysis accordingly.

{¶18} At trial, Tolliver, who is Potts' brother, testified that he went to Potts' house on December 23, 2014, where he met up with Potts and a man known to him as "Tushay." Tolliver identified Sibley in court as the man he knows as "Tushay." Tolliver testified that on the day in question, Potts told him that he was going to rob Mr. Delaney. Tolliver testified that he, Potts, and "Tushay" drove a red truck to the south side of Lorain and parked the truck near Homewood Drive. According to Tolliver, upon parking the truck, Potts again stated that they were going to "rob the dude" and told him that he had to help. Tolliver stated that Potts then removed a gun from the middle console of the truck and placed it in his pants. Tolliver testified that the plan was to rob Mr. Delaney at an abandoned house on Gary Avenue, which was a neighborhood he was familiar with. Tolliver stated that he, Potts, and "Tushay" then walked from the truck to the nearby abandoned house and waited on the back porch as Potts texted Mr. Delaney to lure him to their location. Tolliver stated that when Mr. Delaney arrived at the house, he met him near the sidewalk while Potts and "Tushay" waited out of sight. Tolliver stated that while he walked up the driveway and towards the house with Mr. Delaney, Potts and "Tushay" both ran at Mr. Delaney with a gun pointed at him. Tolliver testified that he heard either Potts or "Tushay" tell

Mr. Delaney to "give it up." Tolliver recalls that he then heard gunshots, saw Mr. Delaney fall to the ground, and heard Mr. Delaney start to scream. Tolliver testified that he then ran away.

{¶19} Officer Cielo Rodriguez of the Lorain Police Department also testified at trial. Officer Rodriguez testified that he was the first responding officer on the scene following Mr. Delaney being shot. Officer Rodriguez testified that he arrived to the scene at 10:43 p.m., at which time he discovered Mr. Delaney laying in the front yard with a gunshot wound to the left side of his abdomen. Officer Rodriguez also testified that he located a number of Mr. Delaney's personal belongings, including his wallet and keys, on the lawn "far away" from where Mr. Delaney was laying. Lastly, Mr. Delaney testified at trial, at which time he identified Sibley as the individual who shot him on the night in question.

{¶20} Based on the foregoing evidence, we conclude that the State presented sufficient evidence at trial demonstrating that Sibley attempted to commit a theft offense against Mr. Delaney on the day in question. The evidence clearly demonstrates that Sibley and Potts lured Mr. Delaney to the Gary Avenue residence on December 23, 2014, with the intent to rob him. Although Sibley argues that no theft offense was either attempted or committed based on the fact that nothing was ever taken from Mr. Delaney, we must reject this argument. "It is not necessary * * * that a theft actually be completed for an aggravated robbery to occur because, as clearly indicated by R.C. 2911.01, an attempted theft is sufficient." *State v. Mitchell*, 10th Dist. Franklin No. 10AP-756, 2011-Ohio-3818, ¶ 26, citing *State v. Davis*, 10th Dist. Franklin No. 76AP-957, 1977 WL 200311, *5 (July 28, 1977). Attempt is "'an act or omission constituting a substantial step in a course of conduct planned to culminate in [the actor's] commission of the crime.'" *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 101, quoting *State v. Woods*, 48 Ohio St. 2d 127 (1976), paragraph one of the syllabus. Here, the evidence, construed in a light most

favorable to the State, established that an attempted theft occurred. Specifically, Tolliver testified that Potts and Sibley planned to rob Mr. Delaney and that either Potts or Sibley ordered Mr. Delaney to "give it up" immediately prior to shooting him. Moreover, Officer Rodriguez testified that Mr. Delaney's personal belonging were located "far away" from where Mr. Delaney was discovered on the lawn of the abandoned residence. For these reasons, we conclude that the State met its burden of production with respect to establishing that Sibley committed or attempted to commit a theft offense. *See State v. Singfield*, 9th Dist. Summit No. 17160, 1996 WL 137412, *3-4 (Mar. 27, 1996) (determining sufficient evidence existed to show that appellant attempted to rob the victims where appellant and his collaborators approached a vehicle from both sides while carrying concealed weapons and ordered the victims to cooperate). Accordingly, because Sibley does not dispute the State's evidence as it pertains to the remaining elements of the aggravated robbery statute, we conclude that there was sufficient evidence produced at trial to support Sibley's aggravated robbery convictions.

{¶21} This matter also implicates Sibley's conviction for tampering with evidence in violation of R.C. 2921.12(A)(1). R.C. 2921.12(A)(1) provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" Thus, "[t]here are three elements of this offense: (1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, [and] (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 139 Ohio St.3d 339 2014-Ohio-2139, ¶ 11. "A person acts knowingly, regardless of his purpose, when the person is aware that

the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). Proof of intent is often derived from circumstantial evidence, as direct evidence will seldom be available. *State v. Tarver*, 9th Dist. Summit No. 22057, 2004-Ohio-6748, ¶ 10, citing *State v. Lott*, 51 Ohio St.3d 160, 168 (1990).

{¶22} The trial court also instructed the jury on complicity. R.C. 2923.03(A) provides that

> No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
> (1) Solicit or procure another to commit the offense;
>
> (2) Aid or abet another in committing the offense;
>
> (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
>
> (4) Cause an innocent or irresponsible person to commit the offense.

The Supreme Court of Ohio has held that:

> [t]o support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.

*State v. Johnson,* 93 Ohio St.3d 240 (2001), syllabus. "[P]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." (Internal quotations and citation omitted.) *Id*. at 245.

{¶23}  Here, Officer Rodriguez testified at trial that as part of the investigation into Mr. Delaney's shooting, the Lorain Police Department utilized a canine to locate the suspects or additional evidence.  Officer Rodriguez testified that the canine tracked the suspects "northbound [on Gary Avenue] past Homewood [Drive]" and stopped at Corinna Magrum's residence on Grove Avenue.

{¶24}  Ms. Magrum testified that on December 23, 2014, she was living on Grove Avenue with her boyfriend, Mario Escobar.  Ms. Magrum testified that she knows Potts and Sibley, as she used to purchase drugs from them "all the time."  Ms. Magrum testified that on December 23, 2014, Potts and Tolliver ran into her house through the backdoor and were clearly out of breath.  She testified that Potts asked for bleach, which she provided for him.  She testified that she heard Potts say that he shot a gun and needed to get gun residue off of his hands.  She further testified that Potts removed his clothes and "scrubbed himself down" with the bleach.  Ms. Magrum stated that she then washed Potts' clothes and that Mario provided Potts with new clothes.

{¶25}  Mario Escobar buttressed Ms. Magrum's testimony.  Specifically, Mr. Escobar testified that Potts and his brother ran into his house through the backdoor.  Escobar stated that Potts washed his hands with bleach and that his girlfriend, Ms. Magrum, washed Potts' clothes.  Mr. Escobar stated that Potts was also given new clothes to change into.  Mr. Escobar further testified that Sibley ultimately arrived at his house after Potts and Tolliver.  Mr. Escobar testified that Potts said to Sibley, "I popped him."  Lastly, he testified that Potts and Sibley were picked up in a van, whereas Ms. Magrum testified that Sibley picked Potts up and they left together.

{¶26}   Based on the foregoing, we conclude that there was sufficient evidence presented at trial to sustain Sibley's conviction for tampering with evidence via complicity.  The evidence

produced at trial, if believed, was sufficient to establish that Sibley, knowing an official investigation was about to be or likely to be instituted, "supported, assisted, encouraged, cooperated with, advised, or incited[,]" Potts to destroy, alter, conceal, or remove things with purpose to impair their value in the official investigation. *Johnson*, 93 Ohio St.3d at syllabus. Specifically, Sibley was at Mr. Escobar's house while Potts was washing himself with bleach to remove any gun powder residue. Mr. Escobar stated that while Potts was cleaning himself, Potts told Sibley that he had "popped" somebody. Mr. Escobar and Ms. Magrum both testified that Potts and Sibley left their house together. Viewing the evidence in a light most favorable to the State, we conclude that there was sufficient evidence from which a trier of fact could reasonably conclude that Sibley shared the intent of Potts to impair the value or availability evidence. *See* R.C. 2921.12(A)(1); *see also Johnson* at syllabus  The State produced evidence, which if believed, established that Sibley aided and abetted Potts in tampering with evidence, namely by being present while Potts washed himself with bleach and subsequently leaving with him. On this latter point, Ms. Magrum testified that Sibley picked Potts up and the two men proceeded to leave together. *See State v. Hughes*, 9th Dist. Summit No. 27061, 2014-Ohio-4039, ¶ 28. Accordingly, we conclude that sufficient evidence was presented at trial to sustain Sibley's guilty verdict for tampering with evidence.

**{¶27}** Sibley's third assignment of error is overruled.

### Assignment of Error IV

**The verdicts for Attempted Murder, Aggravated Robbery, Felonious Assault, and Tampering with Evidence, as defined by the court, in counts one, two, three, four, five, and six were against the manifest weight of the evidence.**

**{¶28}** In his fourth assignment of error, Sibley contends that his convictions are against the manifest weight of the evidence. We disagree.

{¶29} A review of the manifest weight of the evidence and the sufficiency of the State's evidence are separate and legally distinct determinations. *State v. Gulley*, 9th Dist. Summit No. CA19600, 2000 WL 277908, *1 (Mar. 15, 2000). When applying the manifest weight standard, appellate courts are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson,* 9th Dist. Summit No. 26900, 2013–Ohio–5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶30} In arguing that his convictions are against the manifest weight of the evidence, Sibley argues that no physical evidence ties him to the shooting. Sibley also argues that two of the State's witnesses were not credible. Specifically, Sibley argues that Tolliver's testimony was not credible because he struck a plea agreement with the State in exchange for his testimony. Sibley also argues that Mr. Delaney's testimony was not credible because he was continually unable to identify him as the shooter in the wake of the shooting. Sibley points to the fact that Mr. Delaney could only identify him as the shooter nearly four months after the day in question, once he had an opportunity to conduct his own research via social media.

{¶31} However, after a thorough review of the record, we cannot conclude that the jury lost its way and committed a manifest miscarriage of justice in convicting Sibley of the charges contained within the indictment. Although Tolliver struck a deal with the State in exchange for

his testimony and Mr. Delaney could not initially identify Sibley as the shooter immediately following the shooting, the trier of fact "'is free to believe all, part, or none of the testimony of each witness.'" *State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. In this case, through extensive cross-examination, the jury was fully aware of Tolliver's plea agreement with the State. *See State v. Yeager*, 9th Dist. Summit No. 19593, 2000 WL 1257801, *7 (Sept. 6, 2000) (noting that the fact that several witnesses had reached plea agreements with the State does not lead to the per se determination that those witnesses are not credible). The jury was also fully aware of Mr. Delaney's inability to positively identify Sibley as the individual who shot him in the immediate wake of the shooting. A verdict is not against the manifest weight of the evidence merely because the trier of fact found the State's witnesses to be credible. *State v. Andrews*, 9th Dist. Summit No. 25114, 2010-Ohio-6126, ¶ 28. Under the circumstance of this case, where there was testimony that Potts and Sibley plotted to rob Mr. Delaney, that Sibley pointed a gun at Mr. Delaney, that Sibley shot Mr. Delaney in the abdomen, and that three men fled the scene following the shooting, we cannot say that the trier of fact clearly lost its way in convicting Sibley of one count of attempted murder, two counts of aggravated robbery, two counts of felonious assault, and one count of tampering with evidence, as well as the attendant firearm specifications thereto. We, therefore, conclude that Sibley's convictions are not against the manifest weight of the evidence.

{¶32} Sibley's fourth assignment of error is overruled.

III.

{¶33} With all four of Sibley's assignments of error having been overruled, the judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.


APPEARANCES:

NICHOLAS J. HANEK, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and ELIZABETH LINDBERG, Assistant Prosecuting Attorney, for Appellee.