[Cite as *State v. Ammons*, 2022-Ohio-1902.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 20CA011605 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JAMAL AMMONS | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 19CR100712 |

DECISION AND JOURNAL ENTRY

Dated: June 6, 2022

TEODOSIO, Judge.

**{¶1}** Appellant, Jamal Ammons, appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms.

I.

**{¶2}** Mr. Ammons and S.W. lived together at 2915 Apple Avenue in Lorain. In March of 2019, S.W. was shot in the upper chest and neck area while two doors down from the couple's home, in front of the residence at 2903 Apple Avenue. A security camera from a nearby club captured surveillance footage from a distance of the incident and its aftermath. The surveillance footage showed two people emerging from the 2915 Apple house, one after the other, and heading to the porch at 2903 Apple. S.W. was then shot around this time and remained in front of 2903 Apple, while the other individual began going back and forth between the front of 2903 Apple and inside the residence at 2915 Apple. Alerted by the gunshot, neighbors soon gathered around S.W. and called police. The police arrived soon thereafter and ordered Mr. Ammons and other

bystanders to not go anywhere. Nevertheless, Mr. Ammons got into the back seat of a vehicle and attempted to leave the scene, but other officers stopped the vehicle down the road.

{¶3} Following an investigation, Mr. Ammons was ultimately charged with attempted murder, two counts of felonious assault, and tampering with evidence, all with attendant firearm specifications. The matter proceeded to a jury trial on those counts. He was also charged with having weapons while under disability, but the matter proceeded to a bench trial on that count. Following his trial, Mr. Ammons was convicted of all counts and specifications. Both felonious assault charges were found to be allied offenses and were merged with the attempted murder charge for purposes of sentencing. The firearm specifications all merged into the firearm specification for the attempted murder charge. The trial court sentenced Mr. Ammons to 8 to 12 years in prison, consecutive to a 3-year mandatory term for the firearm specification.

{¶4} Mr. Ammons now appeals from his convictions and raises three assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

THE JURY ERRED IN FINDING APPELLANT GUILTY OF ATTEMPTED MURDER, TWO (2) COUNTS OF FELONIOUS ASSAULT, AND TAMPERING WITH EVIDENCE, AND FIREARM SPECIFICATIONS FOR EACH COUNT, AS THE APPELLEE FAILED TO PRESENT SUFFICIENT EVIDENCE OF GUILT.

{¶5} In his first assignment of error, Mr. Ammons argues that the State did not present sufficient evidence to convict him of the offenses of attempted murder, felonious assault, tampering with evidence, and the attendant firearm specifications. We disagree.

{¶6} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "A challenge to

the sufficiency of the evidence concerns the State's burden of production * * *" and is, "[i]n essence, * * * a test of adequacy." *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25; *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

**{¶7}** First off, it is undisputed that Mr. Ammons and S.W. were in a relationship and lived together at 2915 Apple Avenue in Lorain. It is also undisputed that S.W. suffered a gunshot wound to the upper chest and neck area on March 29, 2019, just after 5:00 P.M., while she was in front of the residence at 2903 Apple. It is also apparent from the record that S.W. never testified at trial. Detective John Dougherty testified, however, that S.W. had ended her interview with police and was later charged with obstructing official business and making false statements, but those charges were later dismissed by the prosecutor.

**{¶8}** A next-door neighbor ("T.D."), who lives in the house located between 2915 Apple and 2903 Apple, testified at trial that she can hear everything that happens in S.W. and Mr. Ammons' house through her bathroom window. She testified that she was taking a shower that day around 5:00 P.M. when she heard arguing, fighting, yelling, and screaming coming from inside of the couple's house. According to T.D., the argument continued outside of their house and she soon heard a gunshot as she was getting out of the shower and drying her hair. The resident of 2903 Apple ("E.") was also in T.D.'s house at that time, and T.D. testified that "maybe a minute" after hearing the gunshot the two women went outside and over to 2903 Apple, where they found

S.W. lying on the ground bleeding in front of E.'s porch. T.D. testified that no cars were around and Mr. Ammons was the only other person present; he was standing right by S.W. and screaming. Another neighbor ("B.T.") testified that he and his family arrived home soon after the shooting incident, and he administered first aid to S.W. He testified that "every time her heart beat, blood shot out of her neck[,]" so he used a rag and applied pressure to the wound. He testified that, during this time, Mr. Ammons was "running around screaming something" and "pacing back and forth" between the houses.

{¶9} T.D. testified that the police soon arrived and told everyone: "Nobody move. Don't nobody move anywhere. Don't nobody go in the house. Everyone stand right where you are." She testified that Mr. Ammons nevertheless got into a white vehicle and left, so she informed the police. Officer Jared Nighswander testified that he responded to an emergency call regarding a female who had been shot near the corner of Apple Avenue and East 29th Street. He was the first officer to arrive at the scene and assisted some civilians who had already started administering first aid. He testified that someone told him the victim's boyfriend, later identified as Mr. Ammons, was standing near the roadway. The officer testified: "[Mr. Ammons] was attempting to get into a vehicle. I told him that I needed him to come over here until I can figure out what's going on. You can't leave. You've got to come over here. I actually told him to sit down, to have a seat at the house next door." Officer Nighswander testified that Mr. Ammons "started walking over and started sitting down," but once the officer resumed administering first aid to the victim, he heard a neighbor say, "Hey, there he goes. He got in the car."

{¶10} Officer Nighswander radioed the description of the vehicle, a white Chevy Equinox, to his fellow officers who then stopped the vehicle down the road. Officer Robert Gnagy testified that he conducted a traffic stop of the vehicle approximately one block from the scene.

According to Officer Gnagy, Mr. Ammons immediately jumped out of the rear passenger side of the vehicle once it was stopped and had to be ordered to the ground and placed in handcuffs.

{¶11} The parking lot of the American Slovak Club, located across the street from the residences at 2903 and 2915 Apple Avenue, was monitored by a security camera. The police recovered video surveillance footage from that camera, which was introduced at trial. The quality of the security video footage is somewhat poor and grainy, to the extent that the actual shooting cannot be seen and the faces of individual persons cannot be clearly discerned, as they are filmed at some distance. Detective Sergeant Buddy Sivert testified, however, that just after 5:00 P.M.,[1] a person carrying a white bag, later identified through the investigation as Mr. Ammons, can be seen in the video walking from the house at 2915 Apple to the front porch of 2903 Apple. A second person, later identified as S.W., emerges from the house at 2915 Apple and runs toward the porch of 2903 Apple. The detective testified that some kind of altercation occurs, which then carries over onto the front lawn and front walkway of 2903 Apple. One of the two figures then disappears from sight at the same spot where the injured S.W. was later found, while the other person runs back into the house at 2915 Apple. Eight seconds later, a person emerges from 2915 Apple and runs back to the porch at 2903 Apple. He starts to leave again, heading toward 2915 Apple, but hesitates briefly and returns to 2903 Apple as other people begin to arrive at the scene. He then goes back to 2915 Apple once more and meets with

---

[1] Although not at issue here, the video footage is actually time-stamped as being recorded just after 4:00 P.M., but Detective Sivert testified that it is common for time-stamps on security camera footage to sometimes be off by one hour due to Daylight Savings Time.

another person who was waiting on the front porch. The detective's testimony is corroborated by the surveillance footage.

{¶12} Detective Christopher Colon testified that he assisted in executing the search warrant issued for 2915 Apple Avenue. Although no gun was discovered during the search, the detective testified that a plastic bag was found in the house, which had blood on it and contained some broken Bud Ice beer bottles. He also testified that the rear sliding door of the residence was open. Detective Brian Denman testified that while processing the scene he found some broken Bud Ice beer bottles on the front porch and steps of 2903 Apple Avenue.

{¶13} Detective John Dougherty was the lead detective in this case. He testified that police were able to determine from their investigation which person in the security video was Mr. Ammons; he was the individual first carrying a white bag to the front porch at 2903 Apple and then carrying that bag back inside the residence at 2915 Apple. The detective testified that the white bag found in Mr. Ammons' house contained Bud Ice bottles, some of which were broken, while broken Bud Ice bottles were also found on the front porch of 2903 Apple. He testified that another individual can be seen in the video at the 2915 Apple residence when Mr. Ammons is going back and forth between the two houses. Although no gun was ever found in this case, the detective testified that the back door of Mr. Ammons' house was open when the house was searched.

{¶14} Mr. Ammons does not challenge the sufficiency of the evidence as to his conviction for having weapons while under disability, and we will likewise limit our analysis and decline to address that particular count. Mr. Ammons' sufficiency argument instead focuses mostly on his convictions for attempted murder and felonious assault. Revised Code 2903.02(A) prohibits purposely causing the death of another, while R.C. 2923.02(A) prohibits purposely or knowingly,

when purpose or knowledge is sufficient culpability for the commission of an offense, engaging in conduct that, if successful, would constitute or result in the offense. "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "Proof of intent is often derived from circumstantial evidence, as direct evidence will seldom be available." *State v. Sibley*, 9th Dist. Lorain No. 16CA010908, 2017-Ohio-7015, ¶ 21.

{¶15} Mr. Ammons was also convicted of two counts of felonious assault. Revised Code 2903.11(A)(1) prohibits knowingly causing serious physical harm to another. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Serious physical harm to persons includes any physical harm that carries a substantial risk of death; involves permanent incapacity or disfigurement or temporary substantial incapacity or disfigurement; or that involves 'acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.'" *State v. Robinson*, 9th Dist. Summit No. 29689, 2021-Ohio-1053, ¶ 22, quoting *State v. Flynn*, 9th Dist. Medina No. 06CA0096-M, 2007-Ohio-6210, ¶ 21, quoting R.C. 2901.01(A)(5). Revised Code 2903.11(A)(2) prohibits knowingly causing or attempting to cause physical harm to another by means of a deadly weapon. "Physical harm to persons" includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon[,]" R.C. 2923.11(A), which includes firearms, *see* R.C. 2923.11(B)(1).

{¶16} Mr. Ammons argues that sufficient evidence was not introduced to demonstrate that he (1) purposely or knowingly engaged in conduct that, if successful, would have resulted in murder, or (2) caused serious physical harm to S.W. Specifically, he contends that no evidence was introduced that he shot the victim or was involved in the shooting. He admits that the surveillance footage shows him walking back and forth between the houses with a white bag, but argues that the video does not depict the actual shooting incident. He stresses that no eyewitness testimony of the actual shooting was introduced at trial, and he directs us to Detective Dougherty's testimony that S.W. told him Mr. Ammons was not the shooter. He also directs us to testimony that another man ("N.B.") was tased and arrested by police at the scene, and that a gunshot residue test was performed on Mr. Ammons, yet the test was never processed or introduced at trial.

{¶17} The identity of a perpetrator must be proved by the State beyond a reasonable doubt, and it may be proved by direct or circumstantial evidence, which do not differ with respect to probative value. *State v. Tyler*, 9th Dist. Summit No. 29225, 2019-Ohio-4661, ¶ 31. Although there were no eyewitnesses to the actual shooting, the State introduced sufficient circumstantial evidence to identify Mr. Ammons as the shooter. T.D. testified that she heard arguing, fighting, yelling, and screaming coming from S.W. and Mr. Ammons' home, which continued outside of the home, just prior to the sound of a gunshot. When T.D. went outside, the only two people she recalled seeing in the area were S.W. bleeding on the ground and Mr. Ammons standing above her screaming. The surveillance video, while indeed grainy and shot from a distance across a parking lot, also shows a person leaving the house at 2915 Apple and going to the front porch at 2903 Apple. Another person leaves the house at 2915 Apple and runs to the porch at 2903 Apple, just before S.W. is purportedly shot. Detective Dougherty testified that the investigation determined that those two people were S.W. and Mr. Ammons. Mr. Ammons even concedes that he was the

individual seen in the video carrying a white bag, which was later found in his home with "a little bit of blood" on it. B.T. testified that blood was shooting out of S.W.'s wound as he administered first aid. Broken Bud Ice bottles were found inside of the white bag as well as in front of 2903 Apple. Although his girlfriend had just been shot and he was instructed by police not to leave the scene, Mr. Ammons admittedly entered a nearby vehicle and tried to leave the scene. Officer Gnagy testified that Mr. Ammons jumped out of the vehicle once it was pulled over and had to be ordered to the ground. Mr. Ammons' reliance on Detective Dougherty's testimony that S.W. said Mr. Ammons was not the shooter is also misplaced, as the trial court sustained an objection to that particular testimony and instructed the jury to disregard the detective's comment. Although testimony at trial established that N.B. ran onto the scene that day and had to be tased and arrested by police, further testimony explained that the police investigation cleared N.B. as well as others of the shooting incident. While the gunshot residue test was never processed or introduced at trial, Detective Dougherty explained during his testimony that the police and the gunshot residue supervisor at BCI determined that the results of the test, whether positive or negative, would have had no evidentiary value in this case, so they chose not to pursue it.

{¶18} Mr. Ammons also argues that insufficient evidence was introduced to convict him of tampering with evidence, primarily because no gun was ever found in this matter. Revised Code 2921.12(A)(1) prohibits altering, destroying, concealing, or removing any record, document, or thing, with purpose to impair its value or availability as evidence in an official proceeding or investigation while knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted. Not only is the recovery of the actual gun not necessary to convict Mr. Ammons of tampering with evidence, but the surveillance video shows Mr. Ammons returning to his home right after S.W. is shot and meeting with an unidentified individual on the front porch.

Mr. Ammons then returns to 2903 Apple while the unidentified individual vanishes from sight into Mr. Ammons' home. Multiple officers also testified that when Mr. Ammons' home was later searched, the back door to the house was still open.

**{¶19}** After reviewing the evidence in a light most favorable to the State, this Court concludes that a rational trier of fact could have found that the essential elements of attempted murder, felonious assault, and tampering with evidence were proved beyond a reasonable doubt. Although the surveillance footage is somewhat grainy and no eyewitnesses actually saw the shooting occur, the State introduced ample circumstantial evidence which demonstrated that Mr. Ammons was the individual who shot S.W. that day and then gave the gun to someone else to remove it from the scene and make it unavailable for the impending investigation.

**{¶20}** Mr. Ammons' first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

APPELLANT'S CONVICTIONS OF ATTEMPTED MURDER, TWO (2) COUNTS OF FELONIOUS ASSAULT, AND TAMPERING WITH EVIDENCE, AND FIREARM SPECIFICATIONS FOR EACH COUNT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF ARTICLE IV, SECTION 3, OF THE OHIO CONSTITUTION.

**{¶21}** In his second assignment of error, Mr. Ammons argues that his convictions are against the manifest weight of the evidence. We disagree.

**{¶22}** A challenge to the manifest weight of the evidence concerns the State's burden of persuasion. *State v. Klafczynski*, 9th Dist. Medina No. 18CA0084-M, 2020-Ohio-3221, ¶ 7. This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶23} Mr. Ammons first argues that his convictions are against the manifest weight of the evidence because "there was no physical evidence or eyewitness testimony of the shooting * * *." To that extent, his argument sounds in sufficiency rather than weight. *See, e.g., State v. Betts*, 9th Dist. Summit Nos. 29575, 29576, and 29577, 2020-Ohio-4800, ¶ 34. *See also State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20 ("[S]ufficiency and manifest weight are two separate, legally distinct arguments."). We have already determined above that the State presented sufficient evidence at trial to support Mr. Ammons' convictions, and we need not engage in that analysis again. *See State v. Daniels*, 9th Dist. Wayne No. 17AP0036, 2020-Ohio-1176, ¶ 26.

{¶24} Mr. Ammons also contends that the evidence in this case weighs heavily in his favor, directing us once more to Detective Dougherty's statement that S.W. told him Mr. Ammons was not the shooter. However, Mr. Ammons again neglects to acknowledge the prosecutor's sustained objection to that same testimony and the trial court's immediate instruction to the jury to disregard it. The detective's statement was therefore not evidence to be considered in Mr. Ammons' trial.

{¶25} Mr. Ammons also argues that he never had a chance to question S.W. because she was never called as a witness to testify at trial. We are unsure if Mr. Ammons is suggesting his constitutional right to confront witnesses against him was violated or if his constitutional right to compulsory process was violated here, but, either way, this argument is not appropriate for consideration under a challenge to the manifest weight of the evidence.

{¶26} Notwithstanding the above arguments, upon review, we conclude that the weight of the evidence supports the conclusion that Mr. Ammons shot S.W. during an argument, gave the gun to the unknown acquaintance seen in the video for removal from the scene, and then attempted to flee the scene after police arrived and instructed him not to leave. A neighbor heard fighting coming from within S.W. and Mr. Ammons' residence, which continued outside of the couple's home. After the neighbor heard a gunshot, she went outside to investigate, finding Mr. Ammons and S.W. as the only two people around. Although the surveillance video is not the best quality, no one else can be seen around S.W. and Mr. Ammons in the video during the time of the shooting. The video shows Mr. Ammons going back and forth between the two houses and meeting with an unknown person on his front porch. When the police arrived, an officer instructed Mr. Ammons to stay put, but Mr. Ammons chose instead to immediately leave the scene in a vehicle before jumping out of that vehicle when it was stopped down the road.

{¶27} After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot say that the jury, in resolving conflicts in the evidence, clearly lost its way and created such a manifest miscarriage of justice that Mr. Ammons' conviction must be reversed and a new trial ordered. *See Otten* at 340. Mr. Ammons has also not demonstrated that this is the exceptional case in which the evidence weighs heavily against the conviction. *See Thompkins* at 387.

{¶28} Mr. Ammons' second assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN GIVING A FLIGHT INSTRUCTION TO THE JURY BECAUSE THERE WAS NO EVIDENCE SHOWING THE APPELLANT TOOK AFFIRMATIVE STEPS TO EVADE DETECTION AND APPREHENSION BY THE POLICE.

{¶29} In his third assignment of error, Mr. Ammons argues that the trial court erred in giving the jury a "flight" instruction because no evidence was presented that he took affirmative steps to evade detection or apprehension by the police. We disagree.

{¶30} "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. "This Court reviews a trial court's decision to give or not give jury instructions for an abuse of discretion under the particular facts and circumstances of the case." *State v. Calise*, 9th Dist. Summit No. 26027, 2012-Ohio-4797, ¶ 68. An abuse of discretion implies the court's decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying this standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶31} Evidence of flight is admissible as it tends to show consciousness of guilt, and a jury instruction on flight is appropriate if there is sufficient evidence in the record to support the charge. *State v. Johnson*, 9th Dist. Lorain No. 18CA011329, 2020-Ohio-4178, ¶ 64. Thus, the record must contain evidence from which reasonable minds might reach the conclusion sought by the instruction. *Id.*

{¶32} The trial court provided the jury in this matter with the following instruction over Mr. Ammons' objection:

Testimony has been admitted indicating that the defendant fled the scene. You're instructed that leaving the scene alone does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness of guilt. If you find that the facts do not support that the defendant left the scene or if you find some other motive prompted the defendant's conduct or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose.

However, if you find that the facts support that the defendant engaged in such conduct, if you decide that the defendant was motivated by a consciousness of guilt, you may, but you're not required to consider that evidence in deciding whether the defendant is guilty of the crimes charged. You alone will determine what weight, if any, to give this evidence.

{¶33} Mr. Ammons concedes that he left the scene of the shooting, but he argues that he first remained at the scene until police arrived and then "merely left" in an SUV after speaking with Officer Nighswander. He cites the Eighth District's decisions in *State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2014-Ohio-3583, and *State v. Halstead*, 8th Dist. Cuyahoga No. 102723, 2016-Ohio-290, and contends that he did not take affirmative steps to avoid detection and apprehension beyond simply not remaining at the scene. The fact-pattern in *Jackson* is distinguishable from Mr. Ammons' case, however, because the police made no effort to locate Jackson once he was identified as a suspect, and he was arrested two days after the murder without fleeing, resisting, or protesting in any way. *See Jackson* at ¶ 48. There was no evidence "that Jackson fled to a location where he could not be located or that he evaded police once detected." *Id.* The fact-pattern in *Halstead* is also distinguishable, as Halstead robbed the victim, slashed his throat, and left the scene prior to any police involvement. *Halstead* at ¶ 5. As our sister court noted: "Halstead's leaving the scene was not deliberate flight in the sense of evading police and detection." *Id.* at ¶ 15.

{¶34} We find the fact-pattern in Mr. Ammons' case to be more akin to the facts in this Court's recent decision in *State v. Johnson*, 9th Dist. Lorain No. 18CA011329, 2020-Ohio-4178,

in which we concluded that sufficient evidence was introduced to allow a reasonable person to conclude that Mr. Johnson fled the scene of a shooting. *Id.* at ¶ 67. In *Johnson*, the officer who arrived at the scene of a shooting made contact with the occupants of a running vehicle parked in the driveway and advised them to wait where they were until he was able to determine what was happening. *Id.* at ¶ 66. The vehicle and its occupants left the scene anyway. *Id.* Video footage from the officer's dash cam corroborated his testimony at trial, even though the actual conversation was inaudible. *Id.*

**{¶35}** In the case sub judice, T.D. testified that the police arrived at the scene and told everyone not to go anywhere. Officer Nighswander testified that Mr. Ammons was trying to get into a vehicle, so he specifically instructed Mr. Ammons that he could not leave and that he needed to sit down at the house next door. Despite clear instructions to not go anywhere, both Officer Nighswander and T.D. testified that Mr. Ammons got into the vehicle anyway and attempted to leave the scene. Additional police units had to conduct a traffic stop of the vehicle down the road. The witnesses' testimony is also corroborated by the surveillance video entered into evidence. The video shows Officer Nighswander calling Mr. Ammons away from the vehicle and speaking to him, although no audio is available. Once the officer returns next door to attend to the victim, Mr. Ammons waits merely seconds before jogging back over to the vehicle, entering it, and leaving the scene.

**{¶36}** Upon review, we conclude that the State presented sufficient evidence at Mr. Ammons' trial to allow a reasonable person to conclude that Mr. Ammons fled the scene of the shooting after being instructed not to do so by police. *See id.* at ¶ 64-67. Consequently, the trial court did not err in giving a flight instruction to the jury.

**{¶37}** Mr. Ammons' third assignment of error is overruled.

## ASSIGNMENT OF ERROR FOUR

THE TRIAL COURT ERRED IN PERMITTING TESTIMONY OF IMPEACHMENT TO VICTIM IN REGARD TO HER CRIMINAL CHARGES WITHOUT GIVING APPELLANT AN OPPORTUNITY TO CROSS-EXAMINE WITNESS ABOUT THE CHARGES IN VIOLATION OF EVIDENCE RULE 608(B), EVIDENCE RULE 611(B), AND IN VIOLATION OF APPELLANT'S RIGHT TO CONFRONT WITNESSES UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

{¶38} In his fourth assignment of error, Mr. Ammons argues that the trial court erred in permitting testimony that S.W. was charged criminally as a result of the police investigation in this matter, in violation of Evid.R. 608(B) and 611(B) as well as the Sixth Amendment to the United States Constitution. We conclude that Mr. Ammons did not properly preserve these arguments for appeal.

{¶39} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. We therefore review a trial court's decision regarding the admission or exclusion of evidence for an abuse of discretion. *State v. Powell*, 9th Dist. Lorain No. 12CA010284, 2017-Ohio-4030, ¶ 16. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶40} Nevertheless, we need not reach the merits of this assignment of error, as we instead conclude that Mr. Ammons has not properly preserved his arguments for appeal. Pursuant to Evid.R. 103(A)(1), "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected" and "a timely objection or motion to strike

appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context * * *."

{¶41} The following exchange occurred during the prosecutor's direct examination of Detective Dougherty:

Q: And did you take any steps in terms of criminal charges against [S.W.]?

A: Yes.

Q: And what was that?

A: Obstructing official business, making false statements.

MR. ALBENZE: I'm going to object to the criminal charges related to the victim.

THE COURT: Overruled.

{¶42} As the record reflects, defense counsel did not state a specific ground for the objection, and the reason for the objection is not apparent from the context. *See* Evid.R. 103(A)(1). On appeal, Mr. Ammons now challenges the admission of this testimony in several different respects, including alleged violations of two different Rules of Evidence as well as the Sixth Amendment to the United States Constitution. None of these issues were specifically raised by Mr. Ammons at the trial court level. This Court therefore cannot determine from the record which of these arguments, if any, constituted the specific grounds for counsel's objection at trial, and which arguments were resultingly forfeited. *See, e.g., State v. Williams*, 9th Dist. Summit No. 22877, 2006-Ohio-4720, ¶ 17-18 (citing Evid.R. 103(A)(1) and declining to reach the merits of the assigned error, noting that the specific ground for objection raised at trial was not the same challenge later raised on appeal). *See also, e.g., Krainz v. Wilson*, 9th Dist. Summit No. 16523, 1994 WL 273249, *4 (June 22, 1994) (stating that, if a party were permitted to raise one basis for an objection in the trial court and argue a different basis to the appellate court, the complaining

party could deliberately raise a frivolous basis for objection upon the proffer of evidence and later raise a genuine argument whenever the ultimate result proves unsatisfactory). Because Mr. Ammons did not properly preserve any of his arguments at the trial court level, those arguments were forfeited for purposes of appeal. *See State v. Parsons*, 9th Dist. Lorain No. 18CA011328, 2019-Ohio-5021, ¶ 6. While Mr. Ammons could still argue plain error on appeal, *see* Evid.R. 103(D), he has not done so. "[T]his court will not sua sponte undertake a plain-error analysis if a defendant fails to do so." *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 41.

**{¶43}** The body of this assignment of error also contains challenges to the sustained objection to Detective Dougherty's testimony on cross-examination that S.W. told him Mr. Ammons was not the shooter. Mr. Ammons' captioned assignment of error only challenges the admitted testimony of S.W.'s criminal charges, however, and not the excluded testimony regarding the identity of the shooter. "[A]n appellant's assignment of error provides this Court with a roadmap on appeal and directs this Court's analysis." *State v. Marzolf*, 9th Dist. Summit No. 24459, 2009-Ohio-3001, ¶ 16. *See also State v. Harlow*, 4th Dist. Washington No. 13CA29, 2014-Ohio-864, ¶ 10 (stating that appellate courts review assignments of error, not mere arguments). Because Mr. Ammons' challenge to the excluded testimony goes beyond the scope of his captioned assignment of error, we decline to address it. *See State v. Duffy*, 9th Dist. Lorain Nos. 18CA011342, 18CA011343, 18CA011344, 18CA011345, 18CA011346, 18CA011347, 18CA011348, and 18CA011349, 2020-Ohio-3137, ¶ 23.

**{¶44}** Mr. Ammons' fourth assignment of error is overruled.

III.

**{¶45}** Mr. Ammons' assignments of error are all overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SUTTON, J.
CONCURS.

CARR, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶46} With respect to the majority's resolution of the fourth assignment of error, I concur in judgment only. Specifically, I would address the second portion of Ammons' argument on the merits. Ammons' stated assignment of error includes the assertion that he was not given the opportunity to cross-examine a witness about charges against the victim. I would conclude that

the argument in the body of the brief concerning the cross-examination of Detective Dougherty is related to that portion of the stated assignment of error. Therefore, I would conclude that the argument is not outside the scope of his captioned assignment of error, and I would address it on the merits.

{¶47} As to the merits, even assuming there was error, I fail to see how the error impacted the outcome of the trial, nor has Ammons explained how he was prejudiced by it given the other evidence admitted at trial.

APPEARANCES:

ALISSA R. BARBOSKY, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.