[Cite as *State v. Arthur*, 2022-Ohio-1980.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    21CA0075-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOSEPH M. ARTHUR | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.    20CR0852 |

DECISION AND JOURNAL ENTRY

Dated: June 13, 2022

HENSAL, Judge.

**{¶1}** Joseph Arthur appeals his conviction from the Medina County Court of Common Pleas. This Court affirms.

I.

**{¶2}** A grand jury indicted Mr. Arthur on one count of corrupting another with drugs in violation of Revised Code Section 2925.02(A)(3), (C)(1), a felony of the second degree. Mr. Arthur pleaded not guilty and the matter proceeded to a jury trial. The following facts were adduced at trial.

**{¶3}** According to the Medina County coroner's testimony and the death certificate she prepared, the victim in this case died from an acute fentanyl and norfentanyl intoxication or overdose. The victim was last seen alive around 3:45 a.m. on Saturday, May 30, 2020, when the victim's neighbor's front door camera captured the victim walking into his (the victim's) apartment alone.

{¶4}    The victim's brother discovered the victim's body Saturday evening when he and his girlfriend went to the victim's apartment because the victim had not been answering any phone calls.  The victim's brother observed the victim lying unresponsive on a couch.  The victim's brother's girlfriend called 911, and the police and EMS responded to the scene.  On the end table next to the couch, the police discovered a white, powdery substance, which was later tested and identified to be a mixture of heroin, fentanyl, and valeryl fentanyl.

{¶5}    The police discovered a bindle in the victim's trash can, which they believed contained the drugs prior to their use.  DNA testing on the bindle revealed two major contributors: the victim and Mr. Arthur.  Although there was insufficient residue on the bindle to perform chemical testing to confirm its contents, there was no apparent dispute at trial that the drugs on the victim's end table had been in the bindle.

{¶6}    Mr. Arthur was the last known person with the victim before he died.  Mr. Arthur and the victim were friends, had known each other since middle school, had both struggled with drug addiction, and had both completed bouts of sobriety.  They had recently reconnected after the victim completed an intervention-in-lieu-of-conviction program.  According to the victim's family, the victim seemed to be doing better, but there were some concerns that the victim had started drinking and/or doing drugs again.

{¶7}    Sergeant (now Chief) Chafin interviewed Mr. Arthur four times.  The first interview occurred several days after the victim's death.  Throughout the four interviews, Mr. Arthur offered information piecemeal, and only after the police confronted him with additional information during each interview, including the calling history and GPS information extracted from the victim's cell phone, as well as the DNA results confirming the presence of Mr. Arthur's DNA on the bindle.  In summary, Mr. Arthur's account of what transpired the two days prior to the victim's death went

from them hanging out together, going to a few bars, getting food, and drinking alcohol together, to going to a drug dealer's house twice (once on Thursday and once on Friday) and buying the drugs that the coroner testified caused the victim's fatal overdose.

**{¶8}** Mr. Arthur acknowledged during his interviews that he had withheld information from the police, that they had to pry information out of him, and that he withheld information because he was concerned for the drug dealer, who he described as a good person and a good dad. There was no dispute that the drug dealer was Ronell Cox, who goes by LC. During one of the interviews, Mr. Arthur admitted that he gave the victim LC's phone number. He also admitted that, when they went to buy drugs from LC the night before the victim's death, LC handed the drugs to him, and he passed them to the victim.

**{¶9}** LC testified at trial on behalf of the State. LC testified that he was currently in prison because he pleaded guilty to corrupting another with drugs. LC testified that he sold drugs to Mr. Arthur on Friday, May 29, which was the day before the victim's death. He testified that he knew Mr. Arthur from past drug deals, but that he did not know the victim well. He testified that the victim drove to his house on Friday, that Mr. Arthur was in the passenger's seat, that Mr. Arthur gave him money, and that he handed the drugs to Mr. Arthur before the victim pulled off. Although he was not sure, LC testified that he thought he only gave one bindle of drugs to the victim and Mr. Arthur on Friday. LC testified that he did not remember selling drugs to the victim or Mr. Arthur on Thursday.

**{¶10}** The State presented evidence indicating that the victim's cell phone was used to call LC once on Thursday and twice on Friday. The victim's cell phone records revealed that the victim had not called LC's number prior to Thursday, May 28, 2020, which was around the time Mr. Arthur and the victim had reconnected. According to Mr. Arthur's testimony at trial, the

victim asked for LC's phone number, so Mr. Arthur handed the victim his phone and the victim must have retrieved LC's number from his phone.

{¶11} Sergeant Chafin testified that the victim's ex-girlfriend told him that LC had been the victim's dealer in the past. Sergeant Chafin also testified, however, that there had been a gap in contact between the victim and LC, that drug dealers frequently change phone numbers, and that Mr. Arthur admitted to giving the victim LC's new phone number. He acknowledged, however, that the victim was also connected with LC on Facebook, although there was no indication that the victim used Facebook to contact LC.

{¶12} According to Mr. Arthur's testimony at trial, it was the victim's idea to go to LC's house on Thursday and buy drugs. Mr. Arthur testified that the victim bought drugs from LC on Thursday, but that he did not. Mr. Arthur testified that he and the victim went back to LC's house on Friday, and that they both bought drugs from LC. He testified that the victim called LC once to set up the deal, and then another time to let LC know they were close to his house.

{¶13} Mr. Arthur testified that the victim was driving and that, when they pulled up to LC's house, LC came to the passenger-side window, took the money from Mr. Arthur, and then tossed the drugs onto Mr. Arthur's lap. Mr. Arthur testified that he and the victim paid for their own drugs, and that he either handed the victim the bindle or placed it near the center console. According to Mr. Arthur, he and the victim hung out together Friday evening but did not use drugs together. The victim then returned to his apartment alone, which was corroborated by footage from the victim's neighbor's front door camera.

{¶14} Mr. Arthur maintained that the victim had access to LC regardless of his (Mr. Arthur's) connection to him. Mr. Arthur admitted that he was still a struggling drug addict, and

that he lied to the police on several occasions because he was high at the time and/or he was fearful of LC.

{¶15} The jury returned a verdict of guilty. Mr. Arthur now appeals, raising four assignments of error for this Court's review.

II

ASSIGNMENT OF ERROR I

THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT.

{¶16} In his first assignment of error, Mr. Arthur argues that the State failed to present sufficient evidence to establish that he corrupted the victim with drugs under Section 2925.02(A)(3). For the reasons that follow, this Court disagrees.

{¶17} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶18} Section 2925.02(A)(3), under which Mr. Arthur was convicted, provides that no person shall knowingly "[b]y any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person * * *." Regardless of purpose, a person acts "knowingly" when "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C.

2901.22(B). Here, the trial court instructed the jury that "furnish" means "to provide, to supply, or to give access to." *See Ohio Jury Instructions*, CR Section 525.02 (Rev. Dec. 2021). It instructed the jury that "induce" means "to influence or to prevail upon someone by persuasion or argument*." See id.*

{¶19} At trial, the State presented evidence indicating that LC sold drugs to Mr. Arthur, and that Mr. Arthur then gave the drugs to the victim. The State also presented evidence indicating that the victim ingested those drugs and died of an acute fentanyl and norfentanyl overdose. Viewing this evidence in a light most favorable to the State, we conclude that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Mr. Arthur's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶20} In his second assignment of error, Mr. Arthur argues that his conviction was against the manifest weight of the evidence. This Court disagrees.

{¶21} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26. This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over

another version." *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 25, quoting *State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15.

{¶22} In support of his second assignment of error, Mr. Arthur summarily asserts that the jury heard improper opinion testimony from Segreant Chafin about his (Mr. Arthur's) credibility, that the coroner did not provide reliable testimony as to the timeframe that the victim ingested the drugs that supposedly resulted in his death, and that there was no evidence that he furnished the drugs to the victim. Mr. Arthur's one-paragraph argument does not contain citations to the record, nor does it contain citations to legal authority other than the manifest-weight standard. *See* App.R. 16(A)(7) (requiring an appellant's brief to contain citations to the legal authority and parts of the record on which the appellant relies). Regardless, Mr. Arthur has not established that this is the exceptional case in which the evidence weighed heavily against his conviction.

{¶23} Regarding Sergeant Chafin's testimony, Mr. Arthur admitted during his later police interviews that he had lied during his earlier interviews. Sergeant Chafin confirmed this during his testimony at trial, explaining that the police interviewed Mr. Arthur multiple times because it was apparent that Mr. Arthur was not being truthful. His testimony in that regard was limited to Mr. Arthur's misstatements and/or omissions in this case and was not an opinion as to whether Mr. Arthur was, in general, a liar. Additionally, we note that Mr. Arthur's defense counsel did not object to Sergeant Chafin's testimony. Even if his defense counsel had objected, Mr. Arthur admitted during his own testimony that he lied to the police.

{¶24} Regarding the coroner's testimony, Mr. Arthur has not explained in his second assignment of error how the coroner's inability to pinpoint the exact timeframe in which Mr. Arthur ingested the drugs rendered his conviction against the manifest weight of the evidence. While Mr. Arthur's defense counsel cross-examined the coroner, she did not offer any evidence to

rebut the validity of the coroner's findings. *See TASER Internatl., Inc. v. Chief Med. Examiner of Summit Cty.*, 9th Dist. Summit No. 24233, 2009-Ohio-1519, ¶ 29.

**{¶25}** Regarding Mr. Arthur's assertion that there was no evidence that he furnished the victim the drugs, his argument in this regard is apparently based upon his own version of the events, which the jury was not required to believe. *State v. Straughan*, 9th Dist. Summit No. 29549, 2021-Ohio-1054, ¶ 34, quoting *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 20 ("[T]he jury is free to believe all, part, or none of the testimony of each witness.").

**{¶26}** Having reviewed the record and the arguments presented, this Court concludes that Mr. Arthur has not established that this is the exceptional case in which the evidence weighed heavily against his conviction. Mr. Arthur's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

APPELLANT WAS DENIED A FAIR TRIAL BY THE WITNESS' IMPROPER COMMENTS WHILE TESTIFYING.

**{¶27}** In his third assignment of error, Mr. Arthur argues that he was denied a fair trial because Sergeant Chafin testified that Mr. Arthur lied during the police interviews. For the reasons that follow, this Court disagrees.

**{¶28}** As previously noted, Mr. Arthur's defense counsel did not object to Sergeant Chafin's testimony regarding Mr. Arthur's veracity at trial. Mr. Arthur, therefore, is limited to arguing plain-error on appeal. Crim.R. 52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); *State v. Luther*, 9th Dist. Lorain No. 99CA007394, 2000 WL 1825097, *2 (Dec. 13, 2000) (stating that the appellant's failure to object to testimony at trial limits the appellant to arguing plain error on appeal). Mr. Arthur, however, has not developed a plain-error argument on appeal. *See State v. Piatt*, 9th Dist.

Wayne No. 19AP0023, 2020-Ohio-1177, ¶ 24 ("[T]his Court will not develop a plain error argument on an appellant's behalf.").

**{¶29}** Even if Mr. Arthur had developed a plain-error argument on appeal, Mr. Arthur would be unable to establish that Sergeant Chafin's testimony affected the outcome of the trial. *See State v. Green*, 9th Dist. Summit No. 29777, 2021-Ohio-2222, ¶ 20, quoting *State v. Mohamed*, 151 Ohio St.3d 320. 2017-Ohio-7468, ¶ 26 ("To establish plain error, a defendant must show that (1) there was an error or deviation from a legal rule, (2) the error was plain and obvious, and (3) the error affected the outcome of the trial."). Here, when asked by the prosecutor whether Mr. Arthur had lied during the police interviews, Sergeant Chafin responded affirmatively. There was no dispute, however, that Mr. Arthur had lied to the police. During opening statements, Mr. Arthur's defense counsel acknowledged this, stating: "Of course [Mr. Arthur] lied to the police. Who doesn't lie to the police? You're scared. You don't know what they're trying to do. Plus he's an addict. He's probably high when he's getting interviewed. On top of it, he's looking at his drug dealer going down." Mr. Arthur also admitted to lying to the police, explaining that he did so because he was either high at the time and/or he was afraid of LC. Thus, even if Mr. Arthur had developed a plain-error argument on appeal, he would not have been able to establish that Sergeant Chafin's testimony affected the outcome of the trial.

**{¶30}** In light of the foregoing, Mr. Arthur's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY IMPOSING AN INDEFINITE PRISON SENTENCE UPON APPELLANT WHICH IS UNCONSTITUTIONAL.

**{¶31}** In his fourth assignment of error, Mr. Arthur asserts that the trial court erred by imposing an indefinite sentence under the Reagan Tokes Law, which is unconstitutional. He

asserts that the Ohio Supreme Court accepted jurisdiction of *State v. Maddox*, No. 2020-1266, which will address the constitutionality of that law.

{¶32} Since the filing of the appellate briefs in this case, the Ohio Supreme Court has issued its decision in *Maddox*, __ Ohio St.3d__, 2022-Ohio-764 (Mar. 16, 2022). The Ohio Supreme Court stated that it was "asked to decide whether a criminal defendant's challenge to the constitutionality of R.C. 2967.271, which is a part of the 'Reagan Tokes Law[,]' * * * is ripe for review on the defendant's direct appeal of his or her conviction and prison sentence." *Id.* at ¶ 1. It held that it is. *Id.* It did not render a decision as to the constitutionality of the Reagan Tokes Law. *Id.* (remanding the matter to the Sixth District Court of Appeals to consider the constitutionality of the law).

{¶33} Despite Mr. Arthur's suggestion to the contrary, the *Maddox* decision does not require this Court to hold that the Reagan Tokes Law – and, therefore, Mr. Arthur's sentence – is unconstitutional. It simply holds that constitutional challenges to that law are ripe for review on direct appeal. Mr. Arthur, however, has not properly developed an argument in his merit brief as to the constitutionality of the Reagan Tokes Law. *See Rupert* at ¶ 8-9; *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, ¶ 41 ("A party challenging the constitutionality of a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt."). Instead, without offering any analysis, Mr. Arthur attempts to incorporate the arguments made by the appellant in *Maddox* into his appellate brief. An almost identical argument was presented in *State v. Rupert*, which this Court declined to address on the basis that the appellant failed to properly develop an argument under Appellate Rule 16(A). *State v. Rupert*, 9th Dist. Medina No. 21CA0032-M, 2022-Ohio-329, ¶ 8-9. Like *Rupert*, we decline to address Mr. Arthur's undeveloped argument. *Id.* at ¶ 9. Mr. Arthur's fourth assignment of error is overruled.

III

**{¶34}** Mr. Arthur's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

KIMBERLY STOUT-SHERRER, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.