[Cite as *State v. Bennett*, 2022-Ohio-4796.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 21CA0055-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JACK BENNETT | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 20 CR 0927 |

DECISION AND JOURNAL ENTRY

Dated: December 30, 2022

TEODOSIO, Presiding Judge.

{¶1} Appellant Jack Bennett appeals from his convictions in the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} Mr. Bennett and L.C. were in a romantic relationship at various times over a nine year period. They cohabited for a few years and had two biological children together. When their relationship ultimately ended, L.C. sought and obtained a protection order against Mr. Bennett. Pursuant to that order, Mr. Bennett was not allowed to have any contact with L.C., enter her residence, or be within 500 feet of her even with her permission. The protection order made one exception to allow Mr. Bennett to communicate with L.C. "regarding the parties' minor children only, including but not limited to child-related matters, emergencies, pick-up/drop-off, per [the parties' domestic relations court case]."

{¶3} L.C. and the children lived in L.C.'s grandmother's home with the grandmother. L.C. had a bedroom and living area in the basement which had a locking door to prevent entry from inside the home, as well as a separate egress to the outside. The children and their great grandmother had bedrooms upstairs.

{¶4} On December 18, 2020, Mr. Bennett called L.C. to ask if he could take the children for a visit. L.C. refused that request. Some hours later as she was wrapping Christmas gifts in her locked bedroom, L.C. heard someone trying to open her locked door. Believing it was one of the children, L.C. opened the door to see Mr. Bennett, who appeared "clearly high" and whose behavior was "very agitated and nasty, just too aggressive and manic, just out there, wasn't making sense." L.C. tried for about 15 minutes to deescalate the situation and get Mr. Bennett to leave the home. Instead, Mr. Bennett threw L.C. to the ground, straddled her from behind, wrapped his arm around her neck in a chokehold, and pulled her head up and back. Unable to talk or breathe, L.C. tapped repeatedly on Mr. Bennett's arm until he released her. L.C. ran upstairs to find her son watching and calling 911. L.C. took the phone and reported the incident.

{¶5} After the police arrived and spoke with L.C., they arrested Mr. Bennett and charged him with domestic violence. He was ultimately indicted on one count of domestic violence, one count of aggravated burglary, and one count of violating a protection order, all felonies. Following a bench trial, the trial court found Mr. Bennett guilty on all counts and sentenced him to prison for 18 months, 7 – 10 ½ years, and 36 months, respectively on the three counts, with all terms to be served concurrently. Mr. Bennett filed a timely appeal and raises three assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN
A CONVICTION AGAINST APPELLANT.

**{¶6}** In his first assignment of error, Mr. Bennett argues that the State did not present sufficient evidence to convict him of the offenses of domestic violence, aggravated burglary, and domestic violence. We disagree.

**{¶7}** Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "A challenge to the sufficiency of the evidence concerns the State's burden of production * * *" and is, "[i]n essence, * * * a test of adequacy." *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25; *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

**{¶8}** Mr. Bennett was convicted of domestic violence pursuant to R.C. 2919.25(A), which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Physical harm to persons" includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "Family or

household member" includes "[t]he natural parent of any child of whom the offender is the other natural parent[.]" R.C. 2919.25(F)(1)(b).

{¶9} Mr. Bennett has limited his sufficiency argument to merely challenging the State's evidence regarding the "physical harm" element of domestic violence. We, therefore, limit our discussion accordingly. Mr. Bennett argues that he did not cause physical harm to L.C. because she had no visible injuries and declined medical treatment at the scene.

{¶10} L.C. testified that Mr. Bennett threw her down hard on the floor and that it hurt when her chest and belly hit the ground. The victim further testified that Mr. Bennett then placed his arm around her neck, choking her as he pulled her head up and back towards him. The chokehold caused her pain in the moment and prevented her from talking or breathing. L.C. testified that afterward her voice was raspy, she had a sore throat, and it was difficult to swallow.

{¶11} Although Mr. Bennett minimizes the severity of L.C.'s alleged injuries, the law is clear that the physical harm necessary for domestic violence may consist of "*any injury * * * regardless of its gravity or duration.*" *State v. Thompson*, 9th Dist. Lorain No. 20CA011654, 2021-Ohio-2166, ¶ 11, quoting R.C. 2901.01(A)(3). "Physical harm does not require injury of a magnitude that leaves physical marks on the victim and can be established by the victim's testimony." *Thompson* at ¶ 11, citing *State v. Barlow*, 9th Dist. Lorain No. 18CA011313, 2019-Ohio-582, ¶ 22. L.C. testified as to the pain she felt when Mr. Bennett both threw her down and applied a chokehold to her neck. Upon review of the evidence in a light most favorable to the prosecution, we conclude that the State presented sufficient evidence to demonstrate beyond a reasonable doubt the "physical harm" element of domestic violence.

{¶12} Mr. Bennett also challenges his conviction for violating a protection order. R.C. 2919.27(A)(1) prohibits the reckless violation of a validly issued protection order. "A person acts

recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶13} Mr. Bennett concedes that he was aware that L.C. had a valid protection order against him in effect during the time alleged in the indictment. He argues alternatively that he was either acting pursuant to the exception therein for communication between the parties regarding their children, or that L.C. permitted contact otherwise prohibited.

{¶14} The express terms of the protection order are clearly stated. Mr. Bennett was prohibited from entering L.C.'s residence and having any contact with her and "may not violate this Order **even with the permission of a protected person.**" (Emphasis in original.) Accordingly, L.C.'s alleged acquiescence in having contact with Mr. Bennett did not preclude a violation of the protection order. In addition, L.C. testified that when Mr. Bennett entered her bedroom, he did not inquire about the children. Rather, he began ranting about L.C.'s ex-boyfriend, appeared to search for the presence of someone else in the room, and told L.C., "He [the ex-boyfriend] better not be here[.]" Such matters had nothing to do with the exception in the protection order for communications regarding the parties' children. Based on a review of the evidence in a light most favorable to the prosecution, we conclude that the State presented sufficient evidence to demonstrate beyond a reasonable doubt that Mr. Bennett was guilty of violating a protection order.

{¶15} Finally, Mr. Bennett was convicted of aggravated burglary. R.C. 2911.11(A)(1) provides:

> No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately

occupied portion of the structure any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another[.]

{¶16} Mr. Bennett limits his sufficiency argument as to the aggravated burglary count to the elements of "force, stealth, or deception" and "trespass." Specifically, he argues that he could not have used force to enter L.C.'s home because the door to the home was unlocked. This Court has recognized, however, that "force" merely requires that some effort was physically exerted and that the opening of an unlocked door satisfies the force requirement for burglary. *State v. Snyder*, 192 Ohio App.3d 55, 2011-Ohio-175, ¶ 18-19 (9th Dist.).

{¶17} Mr. Bennett further argues that there is no evidence of force because L.C. agreed that it was possible that one of the children let their father into the home. L.C. testified that she was in the basement when Mr. Bennett entered the home on the upper level and she did not know how he got in. L.C.'s grandmother testified that, when Mr. Bennett suddenly appeared in her home, she did not see either child nearby. Accordingly, her testimony does not support the inference that one of the children opened the door to the home to Mr. Bennett. More significantly, L.C. testified that she was behind a locked door in the basement when she heard someone trying to open that door. When she then opened the door believing it was one of her children, Mr. Bennett alone was there. Mr. Bennett's physical efforts to open the locked door to L.C.'s separately secured area of the home also constituted the requisite force necessary for aggravated burglary.

{¶18} As to the trespass element, Mr. Bennett argues that the State failed to prove the requisite mens rea. Specifically, he argues that there was no evidence that he knowingly entered or remained on the premises without privilege to do so because he had been to L.C.'s home on prior occasions and the door to the home was unlocked on the evening of the incident.

{¶19} Criminal trespass may be established in various ways, including, but not limited to, the following:

No person, without privilege to do so, shall do any of the following:

(1) Knowingly enter or remain on the land or premises of another;

(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard;

(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, * * *.

R.C. 2911.21(A). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶20} The State presented evidence that Mr. Bennett was aware that there was a valid protection order against him in existence on the date of the incident. The protection order prohibited him from entering the specific home he entered that evening. Moreover, he had been convicted on a prior occasion of burglary at that same address. Both L.C. and her grandmother testified that they told Mr. Bennett to leave, but he refused. Accordingly, he was on notice against his unauthorized presence there and acted both knowingly and recklessly by entering that home and remaining on the premises.

{¶21} For the reasons above, viewing the evidence in a light most favorable to the prosecution, the State presented sufficient evidence to prove beyond a reasonable doubt the essential elements of domestic violence, violating a protection order, and aggravated burglary. Mr. Bennett's convictions are supported by sufficient evidence. Accordingly, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶22}** In his second assignment of error, Mr. Bennett argues that his convictions are against the manifest weight of the evidence. We disagree.

**{¶23}** A challenge to the manifest weight of the evidence concerns the State's burden of persuasion. *State v. Klafczynski*, 9th Dist. Medina No. 18CA0084-M, 2020-Ohio-3221, ¶ 7. This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

**{¶24}** Mr. Bennett first argues that his aggravated burglary conviction is against the manifest weight of the evidence because "there is no evidence that Mr. Bennett entered the home by 'force, stealth, or deception.'" "To that extent, his argument sounds in sufficiency rather than weight." *State v. Ammons*, 9th Dist. Lorain No. 20CA011605, 2022-Ohio-1902, ¶ 23. As we have already rejected this argument by Mr. Bennett in our analysis in the first assignment of error, we decline to do so again. *See id.*

**{¶25}** Mr. Bennett next argues that L.C.'s hesitancy in calling the police when Mr. Bennett was in her home indicated that he did not commit aggravated burglary. L.C. testified that

she chose not to call the police but instead opted to attempt to placate Mr. Bennett because she believed he was high, knew of his violent inclinations, and hoped she could deescalate the situation without any threat to her children and grandmother. Mr. Bennett cites no authority, and this Court finds none, to suggest that one is free to engage in criminal acts with impunity if a victim is hesitant to involve the police. Mr. Bennett's argument is not well taken.

{¶26} Mr. Bennett also argues that his conviction for violating a protection order is against the manifest weight of the evidence because L.C. allowed him on prior occasions to enter her home. Again, Mr. Bennett argues without authority that a victim's acquiescence in an offender's unlawful acts negates the criminality. We cannot countenance such reasoning. Moreover, the plain language of the parties' protection order expressly states that "[Mr. Bennett] may not violate this Order **even with the permission of a protected person.**" (Emphasis in original.). As Mr. Bennett was aware of the terms of the protection order, yet nevertheless entered and remained in L.C.'s home in violation of those terms, his conviction is not against the manifest weight of the evidence.

{¶27} Finally, Mr. Bennett argues that his conviction for domestic violence is against the manifest weight of the evidence because the victim had no visible injuries and declined medical treatment at the scene. Mr. Bennett admits that L.C. testified that she suffered physical pain as a result of his applying a chokehold to her neck. As L.C. suffered some injury, irrespective of its gravity or duration, the trial court's finding of the physical harm element of domestic violence is not against the manifest weight of the evidence. *See Thompson*, 2021-Ohio-2166, at ¶ 11, quoting R.C. 2901.01(A)(3).

{¶28} After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot say that the trial court clearly

lost its way and created a manifest miscarriage of justice such that his convictions must be reversed and a new trial ordered. *See Otten* at 340. Mr. Bennett has not demonstrated that this is the exceptional case in which the evidence weighs heavily against his convictions for aggravated burglary, violating a protection order, and domestic violence. *See Thompkins* at 387. Mr. Bennett's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY IMPOSING AN INDEFINITE PRISON SENTENCE UPON APPELLANT WHICH IS UNCONSTITUTIONAL.

{¶29} In his third assignment of error, Mr. Bennett "submits that the trial court in his case improperly imposed an indefinite sentence because the indefinite sentencing scheme [under the Reagan Tokes Law] violates the separation of powers doctrine under both the Ohio Constitution and the United States Constitution, and denies him due process under both the Ohio Constitution and the United States Constitution." After asserting that "the Ohio Supreme Court recently accepted jurisdiction to address in the case of *State v. Maddox*, 2020-Ohio-1266, where it is expected to address those very issues as stated above[,]" Mr. Bennett merely "incorporates those arguments raised by Appellant in the *Maddox* case."

{¶30} This Court has seen this exact argument before and we have rejected it. In *State v. Arthur*, 9th Dist. Medina No. 21CA0075-M, 2022-Ohio-1980, we wrote:

> Since the filing of the appellate briefs in this case, the Ohio Supreme Court has issued its decision in *Maddox*, 168 Ohio St.3d 292, 2022-Ohio-764. The Ohio Supreme Court stated that it was "asked to decide whether a criminal defendant's challenge to the constitutionality of R.C. 2967.271, which is a part of the 'Reagan Tokes Law[,]' * * * is ripe for review on the defendant's direct appeal of his or her conviction and prison sentence." *Id.* at ¶ 1. It held that it is. *Id.* It did not render a decision as to the constitutionality of the Reagan Tokes Law. *Id.* (remanding the matter to the Sixth District Court of Appeals to consider the constitutionality of the law).

Despite Mr. Arthur's suggestion to the contrary, the *Maddox* decision does not require this Court to hold that the Reagan Tokes Law – and, therefore, Mr. Arthur's sentence – is unconstitutional. It simply holds that constitutional challenges to that law are ripe for review on direct appeal. Mr. Arthur, however, has not properly developed an argument in his merit brief as to the constitutionality of the Reagan Tokes Law. *See [ ] State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, ¶ 41 ("A party challenging the constitutionality of a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt."). Instead, without offering any analysis, Mr. Arthur attempts to incorporate the arguments made by the appellant in *Maddox* into his appellate brief. An almost identical argument was presented in *State v. Rupert*, which this Court declined to address on the basis that the appellant failed to properly develop an argument under App.R. 16(A). *State v. Rupert*, 9th Dist. Medina No. 21CA0032-M, 2022-Ohio-329, ¶ 8-9. Like *Rupert*, we decline to address Mr. Arthur's undeveloped argument. *Id.* at ¶ 9.

*Arthur* at ¶ 32-33.

{¶31} Mr. Bennett has failed to develop an argument to support his assertion that the indefinite sentencing scheme under the Reagan Tokes Law is unconstitutional. For the reasons enunciated in *Arthur, supra*, we decline to address the merits of his undeveloped argument. Mr. Bennett's third assignment of error is overruled.

III.

{¶32} Mr. Bennett's assignments of error are overruled. The judgment of the Medina Count Court of Common Pleas is affirmed.

Judgment affirmed.

––––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
SUTTON, J.
CONCUR.

APPEARANCES:

THOMAS REIN, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.